UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

KRISTINA R. MONCK,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,

                                         /

Case No. 1:15-CV-1167

HON. RAY KENT

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for disabled adult child benefits (DAC) under Title II of the Social Security Act. The parties have agreed to go forward in this Court for all further proceedings, including an order of final judgment. (ECF No. 9.)

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

**STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo*

review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was nineteen years of age on the date of the ALJ's decision. (PageID.42, 64.) She attended special education classes throughout high school and obtained a certificate, but not a diploma. (PageID.65.) Plaintiff has previously worked at a pizzeria, however the ALJ determined this work did not qualify as past relevant work. Plaintiff applied for benefits on July 6,

2

2011, alleging disability beginning July 8, 1993, due to fetal alcohol syndrome, a mood disorder, and a learning disorder. (PageID.100, 177–183, 210.) Plaintiff's application was denied on November 9, 2011, after which time she requested a hearing before an administrative law judge (ALJ). (PageID.107–113.) On June 13, 2013, Plaintiff appeared with her counsel before ALJ Janet Alaga-Gadigian for an administrative hearing at which time Plaintiff, Mr. Craig Monck (Plaintiff's paternal grandfather and adoptive father), and a vocational expert (VE) all testified. (PageID.59–98.) In a written decision dated January 30, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.42–58.) On September 8, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.33–39.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## DISABLED ADULT CHILD BENEFITS

"Social Security has a program whereby the disabled adult child of someone who meets the nonmedical requirements for DIB can receive DIB [her]self." *Stringer v. Astrue*, 252 F. App'x 645, 648 n.2 (5th Cir. 2007). The claimant "does not have to show that [she] meet[s] the work requirements of 42 U.S.C. § 423(c) because her [father's] work history has qualified [her] for benefits." *Id.* at 648 n.2 (citing 20 C.F.R. § 404.350). The Social Security Administration "consider[s] this a 'child's' benefit because it is paid on a parent's Social Security earnings record."[1]

DAC benefits are available "if such child was under a disability . . . at the time [s]he attained the age of 18 or if [s]he was not under such a disability . . . at such time but was under a disability . . . at or prior to the time [s]he attained . . . the age of 22." 42 U.S.C. § 402(d)(1)(G); *see* 20 C.F.R. § 404.350(a); *see also Jones v. Comm'r of Soc. Sec.*, No. 11–14176, 2012 WL 4355532,

---

[1] https://www.ssa.gov/planners/disability/dqualify10.html (last visited Mar. 17, 2017).

3

at * 1 n.1 (E.D. Mich. Sept. 24, 2012). In substance, section 402(d) "provides that a child of an individual entitled to old age or disability insurance benefits is entitled to Child's Insurance Benefits if [s]he is under a disability (as defined by section 223(d) of the Social Security Act) which began before h[er] twenty-second birthday." *Jones v. Sec'y of Health & Human Servs.*, 89–1603, 1990 WL 17265, at * 1 n.1 (6th Cir. Feb. 27, 1990); *see Wallin v. Astrue*, No. 12–cv–142, 2013 WL 209183, at * 2 (E.D. Wash. Jan. 17, 2013) (The "claimant must prove her disability began on or before her 22nd birthday.").

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability, including DAC benefit claims. *See* 20 C.F.R. § 404.1520(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*. 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her RFC is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (noting that the ALJ determines RFC at step four, at which point the claimant bears the burden of proof).

The ALJ determined that Plaintiff's claim failed at step five. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 15, 2011, the date Plaintiff obtained the age of eighteen and became eligible for DAC benefits. (PageID.47.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of fetal alcohol syndrome; learning disability; ADHD; mood disorder; and oppositional defiance disorder (ODD). (PageID.47–48.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.48–49.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: never climb ladders, ropes, or scaffolds; avoid all exposure to hazardous machinery or unprotected heights; unskilled jobs as defined in the *DOT* with SVP levels of 1 or 2, with simple, routine tasks; no production-rate work; no interaction with the general public; occasional interaction with co-workers; supervisor access as needed, preferably close by during the shift; and

no tandem tasks required.

(PageID.49.) Continuing with the fourth step, the ALJ found that Plaintiff had no past relevant work. (PageID.52.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The expert testified that Plaintiff could perform other work as a janitor (5,000 regional positions), packager (4,000 regional positions), and assembler (5,000 regional positions). (PageID.95–96.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.53.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from July 8, 1993, through January 30, 2014, the date of decision. (PageID.53.)

## DISCUSSION

### 1.     The ALJ's Evaluation of Dr. Theresa J. Anderson-Varney's Opinion.

The record contains two letters from Dr. Theresa J. Anderson-Varney, PhD, addressed "To Whom it May Concern" detailing her treatment with Plaintiff. The first, dated July 13, 2011, notes that Plaintiff had been a patient of hers since Plaintiff was six years old. The doctor had diagnosed Plaintiff with two impairments: fetal alcohol syndrome, and mood disorder. (PageID.367.) The second letter, dated October 31, 2011, contained the doctor's opinion that Plaintiff was not capable of handling her own funds. Dr. Anderson-Varney further remarked that Plaintiff's "judgment is not good, especially with regard to money. [Plaintiff] can follow directions with hands on and repetitive help. She needs someone who is patient and willing to go over and over simple instructions. [Plaintiff] would be able to be persistent completing a task on some days, not

on others. She would definitely struggle. [Plaintiff] has a hard time interacting socially and adapting to her environment." (PageID.444.)[3] The ALJ considered these statements, and while the ALJ did not assign them any specific weight, it is patent the ALJ found that, to the extent the opinions offered restrictions greater than those accounted for in the RFC, they were not supported by the evidence of record. (PageID.51.) Plaintiff argues the ALJ's discussion of these records violates the treating physician doctrine. The Court agrees.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). The Commissioner does not dispute that Dr. Anderson-Varney provided an opinion subject to the treating physician doctrine.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2

---

[3] The record also contains an October 1, 2014, Mental RFC questionnaire that was completed by Dr. Anderson-Varney, as well as an October 16, 2014, statement from Dr. Anderson-Varney regarding Plaintiff's functional abilities. (PageID.29–32, 771–774.) While these documents appear in the record, they were not presented to the ALJ. Accordingly, this Court is precluded from considering that evidence. In *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also Bass v. McMahon*, 499 F.3d 506, 512–13 (6th Cir. 2007). If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it to the ALJ, the Court can remand the case for further proceedings, during which this new evidence can be considered. *Cline*, 96 F.3d at 148. Plaintiff, however, has not asked for a sentence six remand, much less demonstrated that this evidence is new, material, and that good cause existed for not presenting it to the ALJ.

(6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers,* 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment." *Id.* at 376–77.

The ALJ offered four reasons for rejecting Dr. Anderson-Varney's opinion: (1) a gap in treatment between June 2010 and April 2011; (2) the fact that the doctor's treatment notes were photocopies of previous notes, with additional information added on some occasions or dates changed; (3) the doctor's conclusions regarding Plaintiff's ability to complete tasks are not consistent with educational and work records demonstrating that Plaintiff was able to perform moderately complex skills with a good ability to sustain work; and (4) school and work records reflect good social interactions, with most of Plaintiff's conflicts being familial in nature. (PageID.51.) A review

of the record reveals that none of the ALJ's reasons for rejecting the opinion survives scrutiny.

While it is true that it appears Dr. Anderson-Varney did not treat Plaintiff between June 2010 and April 2011, other than noting this fact, the ALJ did not explain why such is relevant. The Court could speculate that the ALJ may have found that a lack of treatment indicated Plaintiff's conditions were not as severe as the doctor found, or that Dr. Anderson-Varney may not have been sufficiently familiar with Plaintiff in rendering her opinion. But Plaintiff underwent extensive treatment during this period, including a period of psychiatric hospitalization. (*See* Ex. 7F.) Moreover, by the time the doctor rendered her opinion in October 2011, she had been seeing Plaintiff weekly since April 2011. Without more of an explanation, the Court finds this observation by the ALJ cannot constitute a good reason for discounting Dr. Anderson-Varney's opinion.

The ALJ's second reason for discounting the opinion also fails to pass muster. While it is true that certain pages of Dr. Anderson-Varney's treatment notes were photocopied, there is no indication that the symptoms listed were no longer present. Indeed, the fact that the doctor would sometimes make additions and substitutions to the photocopied language points the other way. Moreover, the ALJ fails to recognize that the photocopied pages were, at times, also accompanied by additional treatment notes. (PageID.653-672.) While these notes are admittedly difficult to decipher at times, it is not the case that all the pertinent information here has been photocopied.

Turning to the ALJ's observation regarding Plaintiff's ability to complete tasks, it is also not the case that education records indicate Plaintiff had deficits only in the speed of performance. Indeed, in an October 3, 2011, teacher questionnaire, completed by Plaintiff's special education provider when Plaintiff was 18 years of age, it was noted that Plaintiff would daily have a very serious problem in completing work accurately without making careless mistakes. She also

9

would, daily, have a serious problem in focusing long enough to finish an assigned activity or task. She furthermore had a serious problem expressing her anger appropriately. (PageID.435–436.) Plaintiff's teacher also noted that on a weekly basis, Plaintiff would have a serious problem in handing her frustration appropriately. (PageID.438.) Clearly, Plaintiff is more limited in this respect than as recorded by the ALJ.

Finally, the ALJ's observation that Plaintiff's school and work records reflect reasonably good social interactions and that most of Plaintiff's conflicts appeared to be familial in nature is not well supported. While Plaintiff certainly has conflicts at home with her parents, the record also shows that Plaintiff has threatened her school principal, and has been caught shoplifting from stores. (PageID.274.) She is afraid to drive and has no checking account. (PageID.369.) Her teachers have expressed concerns regarding her defiant attitude towards authority. (PageID.278.) Plaintiff has been caught going though other people's bags during slumber parties. (PageID.320.) Moreover, the teacher questionnaire found Plaintiff had a very serious problem in making and keeping friends. (PageID.436.)

For all the above reasons, the Court finds that the ALJ has failed to articulate good reasons for discounting Dr. Anderson-Varney's opinion. On remand, the Commissioner should reevaluate this opinion.

## 2. The ALJ's Evaluation of Plaintiff's Credibility.

At the administrative hearing, Plaintiff testified that she was impaired to an extent far greater than that found by the ALJ. She testified she would experience outbursts when her temper would get the better of her. (PageID.68.) She would need reminders to do things, especially when she was told to do two things at once. (PageID.70.) She had problems with her hygiene, as

she did not like to take baths or showers. (PageID.70–71.) She had an ongoing problem with taking things from her parents without permission. (PageID.71.) She did not take her medications anymore because of side effects. (PageID.73.) She also did not do well with authority figures because they were not respectful to her. (PageID.78.) She thought she could not work a full time job because she would not be able to remember when she had to work, and could not follow directions if she had to do more than one thing. (PageID.79.) The ALJ found that Plaintiff's allegations were "not entirely credible." (PageID.50.) Plaintiff claims the ALJ erred in doing so.

As the relevant Social Security regulations make clear, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. §§ 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and

discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

Plaintiff contends the ALJ erred by providing only a "blanket" statement regarding her credibility. The Commissioner responds by stating that an ALJ is not required to discuss every piece of evidence. While that is true, an ALJ's credibility discussion must consist of more than mere boilerplate language. *See Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 260 (6th Cir. 2015) (noting that the "chief concern with the popularity [of boilerplate language] is the risk that an ALJ will mistakenly believe it sufficient to explain a credibility finding, as opposed to merely introducing or summarizing one.") Here, while much of the ALJ's credibility discussion does appear to be boilerplate credibility language, the Court finds the ALJ did evaluate Plaintiff's credibility beyond the use of this language. Specifically, the ALJ noted that Plaintiff's recent treatment has been

12

relatively benign by noting the contents of a September 2013 psychological report.  (PageID.51.)

In that report, Plaintiff stated that she had started a job in a bakery in the last week. (PageID.759.)  She was not currently taking medication or receiving counseling because she was "happy with [herself] right now."  (PageID.760.)  She reported she would often socialize with her peers.  (PageID.761.)  A mental status examination found her to be alert and cooperative.  She presented with an euthymic mood and with a full range of affect.  Her thought processes appeared to be logical and coherent.  She was also oriented to person, place, time, and situation.  She had fair insight and judgment.  (PageID.761.)  Accordingly, the ALJ correctly noted Plaintiff's recent treatment was relatively benign.

In sum, while much of the ALJ's credibility discussion does consist of boilerplate language, the Court finds the ALJ has articulated sufficient, specific reasons for discounting Plaintiff's credibility.  Those reasons are supported by substantial evidence.  This claim of error is accordingly rejected.

### 3. The ALJ's Evaluation of Craig Monck's Testimony.

Next, Plaintiff argues the ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to discuss the testimony from the hearing of her father, Mr. Craig Monck.  (PageID.799.)  She argues that agency rulings require an ALJ to consider such statements. (PageID.799.)

At the hearing, Mr. Monck stated that he was the adoptive father of Plaintiff. (PageID.88.)  She had been in his home since she was one year old.  (PageID.89.)  He stated that Plaintiff could not remember more than one or two things to do.  (PageID.89–90.)  Plaintiff had hygiene issues, and could not keep herself clean.  (PageID.90.)  Her concentration was "30 to 40

percent." (PageID.91.) When she was not taking her medication, she had violent outbursts. (PageID.91.) Finally, Mr. Monck stated that people would take advantage of Plaintiff, and she could not manage her own funds. (PageID.93.)

Mr. Monck's testimony is not evidence from an acceptable medical source. 20 C.F.R. § 404.1513(a). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See* SSR 06-3p, 2006 WL 2329939 at *1 (Aug. 9, 2006); *see also Hickox v. Comm'r of Soc. Sec.*, No. 1:09-cv-343, 2011 WL 6000829, at * 4 (W.D. Mich. Nov. 30, 2011). As Plaintiff's father, Mr. Monck is an "other source." The ALJ is required only to "consider" evidence from other sources. 2006 WL 2329939, at *2, 6. The ALJ noted that she had considered the entire record, including the opinion evidence and had evaluated such consistent with SSR 06-03p. (PageID.49–50.)

There is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547–48 (6th Cir. 2002). "An ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x. 485, 489 (6th Cir. 2005). "SSR 06-3p does not require that an ALJ discuss opinions supplied by 'other sources' or to explain the evidentiary weight assigned thereto." *Hickox v. Comm'r of Soc. Sec.*, No. 1:09-cv-343, 2010 WL 3385528, at *7 (W.D. Mich. Aug. 2, 2010), *report and recommendation adopted*, No. 1:09-CV-343, 2011 WL 6000829 (W.D. Mich. Nov. 30, 2011).

SSR 06-3p is phrased in permissive rather than mandatory terms:

> In considering evidence from "non-medical sources" who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends and neighbors, *it would be appropriate* to consider such factors as the nature and extent to the relationship, whether the evidence is consistent with the other evidence, and any other factors that tends to support or refute the evidence.

2006 WL 2329939, at *6 (emphasis added). SSR 06-3p also uses the permissive term "should" in connection with the ALJ's explanation of the "consideration" given to "other source" opinions:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of the opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator should generally explain the weight given to the opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

2006 WL 2329939, at *6 (emphasis added); *see Vanportfliet v. Comm'r of Soc. Sec.*, No. 1:10-cv-578, 2012 WL 1345315, at *15 (W.D. Mich. Mar. 26, 2012); *see also Bernard v. Comm'r of Soc. Sec.*, No. 11-12951, 2012 WL 3639054, at *12 (E.D. Mich. July 25, 2012). The Court finds no error in the ALJ's consideration of Mr. Monck's testimony.

But even if the ALJ did commit an error, it was harmless on this administrative record. Harmless error analysis applies in this context. *See Johnson v. Comm'r of Soc. Sec.*, No. 13-cv-14797, 2015 WL 730094, at *37 (E.D. Mich. Feb. 19, 2015); *accord Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) ("No principle of administrative law or common sense requires [this Court] to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.") (quoting *Fisher v. Bowen*, 869 F.3d 1055, 1057

(7th Cir.1989)). Mr. Monck's testimony is largely duplicative of the testimony given by Plaintiff, which was explicitly discussed and discounted by the ALJ for reasons stated above. The ALJ's consideration of Plaintiff's testimony, therefore, adequately took Mr. Monck's testimony into account. *See Johnson v. Comm'r of Soc. Sec.*, No. 13-cv-14797, 2015 WL 730094, at * 37; SSR 06-03p, 2006 WL 2329939, at *6 (stating that an ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, *when such opinions may have an effect on the outcome of the case*") (emphasis added).

### 4. The ALJ's Evaluation of the VE's Testimony.

Finally, Plaintiff contends that the ALJ erred by failing to follow the VE's testimony at the administrative hearing in response to additional hypothetical questions in which Plaintiff would be absent or tardy from work or in which Plaintiff be off task for significant periods during a workday. (PageID.800.) The ALJ was not required to adopt this testimony. In his hypothetical questions to a VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ was not bound by the VE's response to a hypothetical question including limitations she found were not credible and were unsupported by the record. Here, however, the Court is remanding the case for further evaluation of Dr. Anderson-Varney's opinion. If on remand, the ALJ develops a new RFC in response to this review, it may be necessary to receive additional VE testimony.

### 5. Remand is Appropriate.

Plaintiff asks for an award of benefits. (PageID.831.) As detailed herein, the ALJ's conclusion that Plaintiff was not disabled is not supported by substantial evidence. While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision is not supported by substantial evidence, there does not exist compelling evidence that Plaintiff is disabled. Evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The Court, concludes, therefore, that the Commissioner's decision must be reversed and this matter remanded for further factual findings.

### CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g). This matter is remanded for further factual findings, including but not necessarily limited to, reconsideration of Dr. Anderson-Varney's opinion.

A separate judgment shall issue.

Dated: March 27, 2017                /s/ Ray Kent
                                      RAY KENT
                                      United States Magistrate Judge